***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement, as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and National Spinning Company on June 6, 1999.
3. On June 6, 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with National Spinning Company. As a result of this accident, both of plaintiff's legs were amputated, rendering him permanently and totally disabled, and entitling him to lifetime benefits pursuant to N.C. Gen. Stat. § 97-29.
4. The compensation carrier on the risk was Reliance Insurance Company. Due to Reliance's insolvency, the North Carolina Insurance Guaranty Association is administering this claim.
5. Plaintiff's average weekly wage is $552.96.
6. The parties also agreed to stipulate to plaintiff's medical records from Pitt County Memorial Hospital, which have been marked Stipulated Exhibit 1, and to Industrial Commission Forms 33 and 33R, which have been marked collectively as Stipulated Exhibit 2.
7. The issues for determination are as follows:
a. Whether the Otto Bock C-Leg prostheses are reasonable and necessary to effect a cure, give relief, or lessen the period of disability associated with plaintiff's June 6, 1999 injury;
b. Whether plaintiff's request for Otto Bock C-Leg prosthetic devices constitute medical compensation that defendants are liable for providing as contemplated under the Act;
c. Whether defendants have fulfilled their obligation to provide medical compensation reasonably required to effect a cure, provide relief, or lessen his period of disability by providing regular prosthetic devices to the plaintiff; and,
d. Whether defendants retain the right to direct the medical care and select providers of the same in this case where compensability has been admitted and defendants have continued to provide and pay for all reasonably necessary medical care and treatment, including replacement prosthetic devices.
8. At the call of the case for hearing, the parties advised that the housing issue had been resolved and is therefore not addressed in this Opinion and Award.
 ***********
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is forty-one years of age, and suffered the loss of both of his legs above the knee following an admittedly compensable work related injury on June 6, 1999.
2. Following the injury, plaintiff underwent extensive in-patient rehabilitation at Pitt Memorial Hospital under the care of Dr. Joseph Webster. At the time of plaintiff's discharge from Pitt Memorial Hospital in September 1999, Dr. Webster noted that plaintiff had made good progress from a rehabilitation standpoint, and that he was an excellent candidate for prosthetic fitting and training.
3. Plaintiff's initial out-patient rehabilitation efforts were hampered by housing and transportation difficulties. Once the Industrial Commission resolved those issues, plaintiff resumed his gait and prosthetic training at Pitt Memorial under the direction of Dr. Webster and physical therapists Lori Tracy and Tony Bowen. Thereafter, plaintiff did not miss any therapies, and was found to be very motivated and compliant.
4. Despite his best efforts, plaintiff encountered problems becoming proficient in the use of the bilateral lower extremity prostheses that defendants provided after his injury. One problem was the length of time it took plaintiff to put on and take off the prostheses, and the difficulty he had trying to get into the legs. Once he had the prostheses on, plaintiff was limited in the amount of time he could wear them and the distances he could walk because of poor fit, excessive fatigue, and back pain. These problems are well documented throughout the stipulated medical records.
5. Plaintiff's efforts to function independently in the community and at home were also impeded by the fact that he couldn't ambulate using his current system without also using bilateral offset, or loft strand, crutches, which make it difficult for him to maneuver in crowds and impossible to carry things with his hands while ambulating.
6. In light of these problems, Dr. Webster, Lori Tracy, and Tony Bowen all concluded that plaintiff had reached his maximum functional potential with his current prosthetic system, and that he would be an appropriate candidate for a C-Leg prosthetic system with Comfort Flex sockets. On January 21, 2003, plaintiff underwent a prosthetic evaluation at Hanger Orthotics Prosthetics. The results of this evaluation are summarized in Paul Sugg's March 24, 2003 report. In that report, Suggs summarizes the difficulties plaintiff was having at that time with his current system, which was in need of repair, and outlines how plaintiff would benefit from the C-Leg system with Luxon Max feet and Comfort Flex sockets. Specifically, the Luxon Max feet and the Otto Bock C-Leg knee mechanisms would reduce overall energy consumption and provide increased stability, while allowing plaintiff to walk on uneven terrain with a variable cadence.
7. The Otto Bock C-Leg represents the most advanced prosthetic knee unit technology available today. The C-Leg contains a microprocessor built right into the knee unit, which is automatically able to adjust to the individual's walking speed and terrain. The C-Leg also has a stumble recovery feature that literally recognizes when a patient is going to trip, and catches them. The materials are made of carbon graphite and are extremely lightweight, which is very important to a bilateral amputee, who must expend approximately two hundred percent more energy to accomplish normal day-to-day activities.
8. Not every amputee is an appropriate candidate for C-Legs. Some of the factors to consider are the patient's age, the patient's motivation and goals, the medical provider's rehabilitation goals for the patient, the patient's cardiac and pulmonary reserves, and the patient's cognitive abilities. The C-Leg system would not be appropriate for the geriatric patient who only needs to traverse from the bed or wheelchair to the bathroom, who would have difficulty figuring out how to operate the computer equipment, and who would not have the stamina to ambulate longer distances in the community.
9. Despite the cost of the C-Leg prosthetic system, even Medicare and the Veterans Administration will approve it for the appropriate candidate.
10. Given plaintiff's relative youth, his Medicare Functional Index Level K-3, his cognitive abilities, and his active lifestyle, he is an excellent candidate for C-Legs. The C-Leg system has the very real potential of returning plaintiff to quality-of-life conditions similar to those he enjoyed prior to his compensable injury. Without it or a similar system, plaintiff's quality-of-life will continue to be significantly worse than before his compensable injury.
11. Plaintiff has reached his maximum functional potential with his current prosthetic system. He has a history of back pain that is exacerbated by ambulating in the current prosthetic system. Utilizing his current system, he is unable to complete his activities of daily living (ADL's) (dressing, eating, ambulating [walking], toileting, and hygiene [such as holding onto urine]) and his instrumental ADL's, or community interacting (shopping, housework, accounting [bills], food preparation and transportation [driving]).
12. Plaintiff is a young, active adult who has many interests and aspirations. He has demonstrated great motivation, cooperation and determination in regaining his functional mobility. The authorized medical providers are uniformly of the opinion that if given the opportunity to work with a prosthetic system such as the C-Leg, plaintiff could realize his potential in regaining functional mobility, thus reducing his need for wheelchair dependence and increasing his ability to access and utilize home and community environments.
13. The C-Legs will make ambulating more energy efficient, reduce the risk for falls, and make descending steps easier. With C-Legs, plaintiff has the potential to complete ADL's and Instrumental ADL's, walk more efficiently with faster cadence for longer distances, and maximize his functional abilities that will ultimately contribute to improvement in cardiovascular health. Plaintiff would not be able to realize all of these necessary benefits by replacement of the sockets alone.
14. Replacement of plaintiff's current sockets and prosthetic system with the system outlined in Paul Sugg's March 24, 2003 evaluation is reasonable and necessitated by medical circumstances at this time. The recommended prosthetic C-Leg system is reasonable and necessary to effect a cure, provide relief and/or lessen the period of plaintiff's disability.
15. Defendants complain that the expense of providing and maintaining the C-Leg system for the remainder of plaintiff's life could cost as much as $246,000.00 and argue that the prosthetics now used by plaintiff if supplemented by the more comfortable sockets that they have agreed to provide is "good enough." They argue that the goal of the Workers Compensation Act to ensure a limited and determinative liability for employers means that employers should not be required to provide state-of-the-art medical treatment. They further argue that N.C. Gen. Stat. § 97-26 requires that the pecuniary liability of the employer "shall be limited to such charges as prevail in the same community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person."
16. This appeal was brought by the insurer. The Full Commission by this Opinion and Award orders the insurer to pay medical compensation to plaintiff. The reasonable cost to plaintiff of defending this appeal is $2,000.00 based upon the time invested, the amount involved, the results achieved, whether the fee is fixed or contingent, the customary fee for similar services, the experience and skill level of the attorney, and the nature of the attorney's services. With respect to the skill level of the attorney, plaintiff's attorney is very skilled, having served for many years as a Deputy Commissioner of the North Carolina Industrial Commission. Plaintiff's attorney spent 12.5 hours in defending plaintiff with respect to defendants appeal. The legal issues involved in the appeal are novel. Plaintiff did not have a fixed fee contract.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. Replacement of plaintiff's original artificial members is necessitated by medical circumstances at this time, inasmuch as plaintiff has reached his maximum functional capabilities with his current system and it is reasonable to anticipate that plaintiff will be able to realize his potential in gaining greater functional mobility with the C-Leg prosthetic system with Comfort Flex sockets and Luxon Max feet, as outlined in Paul Sugg's March 24, 2003 evaluation, and thereby reduce his need for wheelchair dependence and increase his ability to access and utilize home and community environments. The recommended prosthetic C-Leg system is reasonable and necessary to effect a cure, provide relief and/or lessen the period of plaintiff's disability. N.C. Gen. Stat. §97-25. Therefore, in accordance with defendants' responsibility to pay lifetime medical compensation pursuant to N.C. Gen. Stat. § 97-29, plaintiff is entitled to the above-described prosthetic system.
2. Because he is permanently and totally disabled, plaintiff is entitled to lifetime medical compensation, which is defined in the Workers Compensation Act to include "replacement . . . artificial members when reasonably necessitated by ordinary use or medical circumstances." N.C. Gen. Stat. § 97-2(19). The expert testimony in this case overwhelmingly establishes that the C-Leg prosthetic system, with Comfort Flex sockets and Luxon Max feet, is at this point in the rehabilitation of plaintiff reasonably and medically necessary.
3. A black patch for a missing eye, a hook for a missing hand and a wooden peg leg may have been considered "good enough" medical treatment at one time. However, times change, and the American society defines "good enough" based upon contemporary measures. This is exemplified by laws requiring handicap accessible parking spaces and handicap accessible buildings as well as workplace requirements such as the Americans with Disabilities Act. The fact that Medicare and the Veterans Administration will provide the C-Leg system to appropriate candidates is an indication that changed times makes the provision of the C-Leg system to appropriate candidates an appropriate contemporary measure. N.C. Gen. Stat. § 97-26.
4. If the Industrial Commission at a hearing on review or any court before which any proceedings are brought on appeal under the Workers Compensation Act, shall find that such hearing or proceedings were brought by the insurer and the Commission or court by its decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Commission or court may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs. N.C. Gen. Stat. §§ 97-88, 97-90.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall forthwith provide plaintiff with the complete prosthetic system outlined in Hanger's March 24, 2003 evaluation, and shall provide all reasonable and necessary training, accessory items, physical therapy and medical visits required for plaintiff to realize the full potential use of said system.
2. Defendants shall pay the costs.
3. Defendants shall pay expert witness fees of $270.00 to Dr. Webster, $540.00 to Dr. Wells, $155.00 to Lori Tracy, and $155.00 to Tony Bowen.
4. Defendants shall pay a reasonable attorney fee of $2,000.00 to counsel for plaintiff, pursuant to N.C. Gen. Stat. § 97-88 as part of the bill of costs.
This 1st day of February 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN